SIMON, PLAINTIFF-APPELLEE, *v.* BOARD OF ELECTIONS OF CUYAHOGA COUNTY ET, DEFENDANTS-APPELLANTS.

Ohio Appeals, Eighth District, Cuyahoga County.

No. 25283.  Decided November 6, 1961.

Mr. *Cecil P. Mauk*, for plaintiff-appellee.

Mr. *John T. Corrigan*, prosecuting attorney, and Mr. *John L. Dowling*, assistant prosecuting attorney, for defendant-appellant Board of Elections.

*Hon. David Ralph Hertz*, for defendant-appellant (Joseph S. Lime).

KOVACHY, P. J. This appeal comes to this court on questions of law and fact from a judgment entered in the Court of Common Pleas for the plaintiff. The action seeks to enjoin the Board of Elections of Cuyahoga County from printing the name of Joseph S. Lime on the ballot as a candidate for the office of Mayor to be presented to the electors of the City of Parma, Ohio, at the election to be held November 7, 1961.

Joseph S. Lime was made a party defendant in the proceedings in this court and filed a demurrer and an answer to the petition in the case.

The cause is before us on the pleadings, stipulations of evidence, which include the protest filed by the plaintiff with the Board of Elections, the transcript of proceedings before the Board of Elections, and the Resolution of the Board of Elections, and arguments and briefs of counsel.

The Board of Elections found that the nominating petition, filed by Joseph S. Lime, for the office of Mayor of the City of Parma, Ohio, contained 2027 valid signatures of eligible electors of Parma, that the minimum number of valid signatures required for nomination was 2023 and that said nominating petition was sufficient for its purpose, there being 4 valid signatures in excess of the minimum number required for nomination.

The transcript of the proceedings before the Board discloses *undisputed* evidence that signatures were affixed to petition papers numbers 206, 209, and 191 not in the presence of the persons signing them as circulators. These petition papers had 59 signatures on them.

Notwithstanding such evidence before it, the Resolution entered by the Board shows that the protest against these petition papers was disallowed.

The Resolution also shows that the protest against 21 petition papers containing signatures in the same handwriting was allowed only as to the signatures so affixed, 40 in number, and declared such signatures void but disallowed the protest as to the remaining signatures. The total number of signatures on these petition papers was 421.

The plaintiff avers in his petition that since the affidavits of the circulators of these 21 petition papers were false, the Board should have allowed the protest as to all of the signatures affixed to them.

Under Section 3513.261, Revised Code, a circulator of a nominating petition paper is required to swear before a proper officer when subscribing to the same that the signatures on it "* * * were written in his presence and are the signatures of the persons whose signatures they purport to be. * * *"

It is stated by the Supreme Court in the case of *State, ex rel.* v. *Michell*, 124 Ohio St., 161, 177 N. E., 214, at page 165:

"Other petition papers which were rejected had signatures in the same handwriting and therefore, the affidavit of the circulator that the signatures were made in his presence and were the genuine signatures of the persons whose names they purported to be could not have been true. We are of the opinion that the City Council was correct in its holding that the requirement that the name of the signer to such petition be written by himself is mandatory, and that signing petitions by proxy is not permissible. In each of these instances the affidavits must have been intentionally and knowingly false, and under the *Graves case, supra*, their rejection was warranted."

And paragraph 6 of the syllabus in the case of *State, ex rel.* v. *Graves*, 90 Ohio St., 311, 107 N. E., 1018, states:

"6. An affidavit intentionally and knowingly false, attached to any part of a petition, is not a compliance with the provisions of Section 1g of Article II of the Constitution of the state, and the part of a petition, to which such false affidavit is attached, must be rejected entirely, the same as a part to which no affidavit is attached, whether it contains genuine names or not, for the reason that it lacks the affidavit required by the constitution."

At page 323, the Supreme Court said:

"It must be conceded that any part of a petition to which no affidavit whatever is attached would have to be rejected in toto. The constitution requires an affidavit to each part of a petition, and without that affidavit it would be as worthless as blank paper, no matter if every signature thereon were genuine. An affidavit proven to be wilfully, corruptly and in-

tentionally false is worse than no affidavit at all, for it brands the whole part of the petition to which it is attached with the indicia of fraud. If no affidavit is fatal to the whole petition or any separate part thereof, although the lack of such affidavit is due to innocent mistake, oversight or inadvertence of the person circulating the same, and if all the signatures appearing thereon must be rejected without reference to whether they are genuine or not, upon what rule can it be said that it is the duty of the secretary of state, where it appears that the affidavit to any part of a petition is wilfully, corruptly and intentionally false, to determine upon other evidence the genuineness of signatures appearing thereon and, if he finds that there are some genuine signatures upon that particular part, to include them in the count? Such a holding would be an invitation to commit fraud and perjury."

It necessarily follows, therefore, in view of the clear state of the law in these matters, that the Board abused its discretion in disallowing the protest with regard to petition papers numbered 206, 209 and 191 and disregarded legal provisions plainly applicable to the 21 petition papers by not allowing the protest in *toto* as to all the signatures appearing on them. As a consequence, 440 signatures were improperly declared valid which, under the law, were clearly invalid and should have been so declared by the Board. It will serve no useful purpose to pursue plaintiff's complaints further. From our conclusion above, it is patent that the nominating petition of Joseph S. Lime for the office of Mayor of Parma, Ohio, was insufficient, and, therefore, invalid for the purpose filed.

Defendant Lime maintains in his demurrer that Courts of Equity have no jurisdiction of this action, that the plaintiff has no legal capacity to sue, and that the petition does not state a cause of action.

He relies upon the case of *Chapman* v. *Miller*, 52 Ohio St., 166, 39 N. E., 24, for his contention that a Court of Equity lacks jurisdiction to entertain an action for injunction in an election matter. The syllabus in the *Chapman case* reads as follows:

"Upon submission of objections to certificates of nomination, by board of deputy state supervisors to state supervisor of elections, his decision thereon is final, and the board of

deputy state supervisors refusing to comply therewith may be compelled to do so by mandamus. And an answer stating that they have been enjoined by the court of common pleas or a judge thereof, states no valid excuse for refusing to comply with the decision of the state supervisor. In such case the court of common pelas has no jurisdiction of the subject matter and its order of injunction is void."

The *Chapman case* was an action in mandamus filed in the Supreme Court to compel a Board of Deputy State Supervisors to comply with a decision of the State Supervisor of Elections with respect to objections that had been filed with the Board to the placing of the names of certain candidates on the ballot sheet where there was a tie on the part of the Board and the matter was submitted to the State Supervisor for final decision as the law provided.

The Court of Common Pleas in an injunction action filed with it undertook to adjudicate the very question involved in the objections before the Board in a de novo hearing without reference to or a consideration of the decision rendered in the same matter six days before by the State Supervisor of Elections. (Secretary of State.)

The law at that time was as it is today that the decision of the State Supervisor of Elections in an election controversy properly before him is *final* for the reason that elections belong to the political branch of the government and not to the judicial, and are not *per se* the subject of judicial cognizance unless such decision has been fraudulently or corruptly made or procured or unless said State Supervisor has been guilty of an abuse of discretion.

*State, ex rel.*, v. *Graves*, 90 Ohio St., 311, 107 N. E., 1018.

It is because of the law and the nature of the proceedings before the Court of Common Pleas that the Supreme Court in the *Chapman case* held that the Court of Common Pleas had no jurisdiction of the subject matter and that its order of injunction was void.

The situation in the case here before us is entirely different. The plaintiff here in his petition alleges that the Board of Elections in disallowing his protest with respect to the sufficiency of the nominating petitions of defendant Lime was

guilty of a gross abuse of discretion and of a clear disregard of legal principles applicable thereto and, as a consequence, sets forth a cause of action that is subject to judicial cognizance.

*State, ex rel.* v. *Board*, 164 Ohio St., 193, 129 N. E. (2d), 623.

It seems obvious, therefore, that this action brought by a qualified elector complaining of a decision made by the Board of Elections on a protest filed by him before it and alleging that the Board abused its discretion and disregarded applicable legal provisions in disallowing his protest with respect to the sufficiency and validity of a nominating petition filed by a candidate for office, and asking that the Board be enjoined against submitting such candidacy to the electors, states a cause of action which may be brought by him in a Court of Equity.

In 19 Ohio Jurisprudence 2d, 88, Elections-Judicial Control, Section 92, it is stated:

"The courts have no authority or jurisdiction to interfere by injunction, mandamus, or otherwise, with the performance by the proper election officers of their duties in relation to the disposition of objections to nominations, as prescribed in the statute, at least in so far as it is provided that the decisions of such officers in the premises shall be final, except in the case of fraud or corruption, an abuse of discretion, or a clear disregard of the pertinent statutes or legal provisions. * * *"

The Supreme Court in the case of *Koehler, Jr.* v. *Board*, 125 Ohio St., 251, 181 N. E., 107, reviewed a case identical in nature to the case here before us. The action was for an injunction to restrain a Board of Elections from placing names of candidates on the ballot and was filed in the Court of Common Pleas. It was appealed, as here, to the Court of Appeals on questions of law and fact and the Supreme Court entertained the action on appeal.

See 19 Ohio Jurisprudence 2d, 88, Section 92; 70 A. L. R. Annot., 733; 29 Ohio Jurisprudence 2d, 258, 259, Sec. 72, 73.

In *State, ex rel.*, v. *Board*, 170 Ohio St., 30, 162 N. E. 2d, 118, paragraph one of the syllabus reads:

"1. A citizen has the capacity to maintain a proper action to enforce the performance of a public duty relating to elections and affecting himself and citizens generally, even where such

action involves an attack on the constitutionality of a statute. See *State, ex rel.* v. *Brown*, 162 Ohio St., 147, 122 N. E. 2d, 105.

The demurrer is overruled and since the case had been submitted in the alternative on the merits, decree is herewith entered for the plaintiff as prayed for. Decree for plaintiff.

Exceptions. O. S. J.

SKEEL and HURD, JJ., concur.